UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

BENYEHUDA WHITFIELD,

    Plaintiff,

v.   03-CV-3113

WEXFORD HEALTH SOURCES et al.,

    Defendants.

### Order

    Before the court is the summary judgment motion by defendants Fritts, Moore, Johnson, Frieman, and Burzynski, the only defendants remaining in this case. For the reasons below, the court grants the summary judgment motion and terminates this case.

*Standard*

    A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56©. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). However, Rule 56© "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

*Undisputed Facts*

The defendants do not set forth their undisputed issues of fact in separately numbered paragraphs, but their reason for seeking summary judgment is clear from their motion and brief: they are not medical professionals and were therefore entitled to rely on the treatment decisions by the medical professionals. The court sets forth the following undisputed facts for purposes of this order only. Reasonable inferences are drawn in the plaintiff's favor where disputed questions exist, and some of facts are merely the plaintiff's allegations, which are set forth as true for the purpose of showing that, even if he had evidence to support those allegations, he could not succeed against these defendants. Also, the undisputed facts set forth in this court's order of March 9, 2005, are adopted here by reference (d/e 240, p. 6-13)(some are paraphrased below for clarity's sake).

1. The plaintiff was incarcerated in Pinckneyville Correctional Center from February 6, 2002 through April 23, 2002. He was transferred to the Dixon Correctional Center Psychiatric Unit on or about April 23, 2002.

2. Defendants Fritts and Moore were correctional counselors at Pinckneyville Correctional Center during the relevant time frame. They had the authority to review whether an inmate has been seen by a physician, and to facilitate the reference of an inmate to a medical professional.

3. The plaintiff told defendants Fritts and Moore that he was experiencing severe panic and anxiety attacks. Fritts and Moore admitted that they were familiar with the condition. The plaintiff also told Fritts and Moore about his tooth which was infected and causing him pain.

4. Defendants Johnson, Frieman, and Burzynski were correctional officers at Pinckneyville Correctional Center during the relevant time. These officers escorted a nurse to the plaintiff's cell on March 18, 2002, after the plaintiff's infected tooth had been extracted. The nurse failed to give the plaintiff his prescribed pain medication. This was because the plaintiff's name was not on the list to receive medication, though it should have been. The nurse later checked and did find the prescription order. The plaintiff received his Motrin by 9:15 that evening. (d/e 240, p. 10, ¶¶ 22, 27, 28).

5. In the court's summary judgment order of March 9, the court granted summary judgment in favor of the nurse handing out the medicine on March 18, 2002, concluding that "there is nothing to support an inference that the Motrin prescription was intentionally overlooked, other than the plaintiff's speculation" and that there was no evidence the Motrin was withheld in retaliation for his grievances. (d/e 240, p. 13).

6. On February 22, 2002, defendant Farr, a Licensed Clinical Professional Counselor and Mental Health Professional, examined the plaintiff for a mental health screening . She diagnosed him with a history of schizophrenia-paranoid type and referred him for a psychiatric evaluation. (d/e 240, p. 9, ¶ 19).

7. On March 5, 2002, defendant Dr. Gupta, M.D. examined the plaintiff and diagnosed him with "adjustment disorder with disturbance with conduct/emotion." Dr. Gupta noted that no medications were prescribed because the plaintiff had declined.

8. On March 9, 2005, this court granted summary judgment to the medical defendants who treated the plaintiff for his dental and psychiatric problems at Pinckneyville, finding that "none of these defendants were deliberately indifferent to the plaintiff's serious medical, dental or psychiatric needs. To the contrary, it appears that these defendants did what they could to help the plaintiff, despite his lack of cooperation." (d/e 240, p. 13).

*Analysis*

The plaintiff's case against these non-medical defendants effectively disappeared when the court granted summary judgment to the medical professionals on March 9, 2005. Summary judgment was not granted to these defendants at that time because they had not moved for summary judgment on the merits. Thus, the court believed it prudent to allow them to do so, though the result was all but certain.

The court already concluded in its prior order that the medical professionals treating the plaintiff for his dental and psychiatric problems were not deliberately indifferent (no one disputes the plaintiff's needs were serious). The remaining defendants, all laypersons, were entitled to rely on these professionals' medical decisions. "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . Perhaps it would be a different matter if [non-medical staff] ignored [an inmate's] complaints entirely, but we can see no deliberate indifference [where the staff] investigated the complaints and referred them to medical providers. . ." *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005). There is no evidence that these defendants ignored the plaintiff's complaints. It is clear that the plaintiff was referred to the appropriate professionals and received relatively prompt attention. The plaintiff believes these defendants should have done more, but what more they could have done is not clear. What is clear is that the plaintiff disagrees with his treatment, but that cannot support a constitutional action. *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996).

The same goes for the dispensing of Motrin the day the plaintiff had his tooth extracted: the court has already held that the nurse responsible for dispensing that medicine was not deliberately indifferent, so how could the officers be? Their job was to escort the nurse, not determine what medications needed dispensing.

Lastly, the plaintiff's retaliation claims are based on speculation. There is nothing to support an inference that these defendants did anything wrong, much less that they were motivated by retaliation. Even if they were brimming with retaliatory motive, there is no evidence that things would have happened differently absent that motive. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Summary judgment must therefore be granted in favor of the remaining defendants and this case terminated.

*Costs*

Normally, the court directs the parties to bear their own costs in prisoner civil rights litigation. The plaintiff has filed at least five civil rights suits in this district in the past two years, plus at least one in state court, all but one dealing with alleged continuing retaliation against him. *See Whitfield v. Walker,* 04-3136, 12/2/04 Order. One of those cases, *Whitfield v. Snyder*, 03-CV-3014, names 47 defendants–only three of which were not dismissed on summary judgment. His pending case in *Whitfield v. Walker*, 04-3136, names 61 defendants. This case named 23 defendants, and, after extensive discovery, there is no inference allowed that any of them behaved inappropriately, much less that they were deliberately indifferent. Though the court does not doubt that the plaintiff personally believes that retaliation is behind all actions adverse to him, he has no credible evidence to support that belief.

This case and the plaintiff's other pending cases have put an exceptional strain on the resources of the clerk, court, U.S. Marshals and the defendants. The court accordingly believes modest costs are warranted for the defendants, at least for the costs of obtaining his deposition transcript. *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)(upholding assessment of costs against indigent pro se plaintiff–"...[T]he rule that indigent prisoners, like anybody else, may be required to reimburse costs others have expended defending the prisoners' unsuccessful suits serves the valuable purposes of discouraging unmeritorious claims and treating all unsuccessful litigants alike."). Further, the plaintiff may be required to post bond for costs and fees in future cases he files before proceeding. The court notes that the plaintiff still owes $145.38 for his filing fee in this case; in forma pauperis status allows him to pay in installments, but not to avoid paying altogether.

IT IS THEREFORE ORDERED:

1) The summary judgment motion by defendants Fritts, Moore, Johnson, Frieman and Burzynski is granted (d/e 245). The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. All pending motions are denied as moot, and this case is terminated.
2) Costs for fees of the court reporter for the plaintiff's transcript are awarded to the defendants pursuant to Fed. R. Civ. P. 54(d), on timely submission of an appropriate Bill of Costs.
3) Failure of the plaintiff to pay the costs within sixty days that are assessed may require the plaintiff to post a bond with suitable sureties to cover costs in future cases before he is permitted to proceed in those cases.

Entered this 24th Day of January, 2006.

                                                    s/ Harold A. Baker

                                            HAROLD A. BAKER
                                       UNITED STATES DISTRICT JUDGE